IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL KREISCHER | : | JURY TRIAL DEMANDED |
| 258 Schoolhouse Road, | : | |
| East Stroudsburg, Pa. 18302, | : | |
| | : | CIVIL ACTION NO. 21-cv- |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| E. DAVID CHRISTINE, JR., | : | |
| MICHAEL MANCUSO, | : | |
| WENDY B. SERFASS, | : | |
| MARIO ORLANDO | : | |
| ERIC KERCHNER | : | |
| | : | |
| c/o | : | |
| District Attorney of Monroe County | : | |
| One Quaker Plaza | : | |
| Stroudsburg, Pa 18360, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

AND NOW, comes plaintiff, by and through his attorneys, and demands damages from the defendants, jointly and severally, and in support thereof sets forth the following allegations and claims:

### I. THE PARTIES

1. Plaintiff, Michael Kreischer ("Kreischer" or "Plaintiff")), is an adult individual, citizen and resident of Pennsylvania, residing at 258 Schoolhouse Road in East Stroudsburg, PA. At all times relevant to this Complaint, Plaintiff was a Detective in the Monroe County Office of the District Attorney. Prior to that, Kreischer was a decorated patrol officer with the City of Scranton and then a Nuclear Security Officer.

1

2. Defendant E. David Christine, Jr. ("Christine"), is the District Attorney of Monroe County and responsible for law enforcement activities as well as the overall administration and supervision of the Monroe Country Office of the District Attorney. His actions are taken under color of state law, pursuant to either official policy, custom or practice of Monroe County or as a result of his role in setting the policy and practices of Monroe County. This defendant is being sued in his official and individual capacity. This defendant's office is located at One Quaker Plaza, Stroudsburg, Pa 18360.

3. Defendants Detective Wendy B. Serfass ("Serfass"), Detective Mario Orlando ("Orlando"), and Chief Detective Eric Kerchner ("Kerchner") were and are employed as a Monroe County Detectives, acting under color of state law, pursuant to either official policy, custom or practice of Monroe County or the direction of the District Attorney. These defendants are being sued in their official and individual capacity.

4. Defendant Michael Mancuso ("Mancuso") is the First Assistant District Attorney. This defendant is being sued in his individual and official capacity.

## II. JURISDICTION AND VENUE

5. This is a civil action seeking money damages from defendants for committing acts that deprived plaintiff of rights secured to him under the Constitution and law of the United States of America pursuant to 42 U.S.C. §1983 and state law.

6. This Court's jurisdiction to adjudicate plaintiff's civil rights claims is predicated, *inter alia*, upon 28 U.S.C. §§ 1331 and 1343.   Plaintiff's federal claims arise pursuant to 42 U.S.C. §1983. Plaintiff also invokes the Court's supplemental jurisdiction pursuant to 28 U.S. C. §1367.

7. Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391(b) because all parties reside or maintain their principal place of business in the District, and because all claims accrued within the District.

### III. FACTUAL ALLEGATIONS

8. Plaintiff Kreischer incorporates herein by reference the averments set forth in preceding paragraph 1 through 7.

9. Kreischer served with distinction as a Detective in the Monroe County District Attorney's Office September 2016 to March 1, 2019 at which time he was terminated because he had repeatedly complained about wrongdoing and illegal conduct within the department.

10. Many of Kreischer's assignments required him to work undercover and to infiltrate gangs and drug dealing organizations and other illegal schemes at great personal risk to himself.

11. During these undercover activities, Kreischer's life was threatened on several occasions and criminal actors threatened to shoot him.

12. Despite the stresses his undercover work placed upon him, Kreischer continued to maintain the highest levels of personal integrity and responsibility and, unlike many of his colleagues within the Department, fully lived up to the code of conduct expected of a law enforcement officer.

13. For example, in February 2019, Kreischer complained to his supervisors that his fellow county detectives, rather than destroy contraband cigarettes that had been seized, decided to smoke them and laughed that they were "destroying them one cigarette at a time."

14. Kreischer also complained that the Monroe County District Attorney's Office

failed to comply with state law and regulations regarding the accessing and maintenance of files relating to certain gang activity.

15. Specifically, Gang Intelligence must be maintained and updated according to specific protocols to preserve its confidentiality and safeguard individuals, including confidential informants. The information must be audited, and the electronic database system must be approved by the Commissioner of the Pennsylvania State Police. Rather than follow the require protocols Monroe County utilized a different reporting system that lacked the security protocols approved by the State Police. That information is open to anyone from the Monroe County District Attorney's Office who has access to the system and documents are printed and given to criminal justice agencies with no ability to track and maintain the confidentiality of the information release. Kreischer brought these issues to the attention of Mancuso and Kerchner and was told to "shut the F-up and do as you are told."

16. Kreischer was regularly ostracized by his colleagues because he had a better record of making arrests and other indicia of productivity and regularly sought out assignments without regard to his personal safety and well-being. This was in stark contrast to many of his colleagues, who preferred to stay in the office and at their desks.

17. During one of Kreischer's undercover assignments, a drug gang that he had infiltrated became suspicious that he might be a police officer. One of the gang leaders pulled a gun on Kreischer and was preparing to shoot him when a woman associated with the gang named "Jessica" intervened on Kreischer's behalf and "vouched" for him and said there was "no way that [plaintiff] was a cop." That person's intervention saved plaintiff's life and Kreischer vowed to himself that he would do what he could to help this person, who was

4

suffering from drug addiction.

18. True to his convictions, Kreischer thereafter offered his assistance to Jessica to obtain housing and get drug addiction treatment.

19. When this individual, however, failed to appear for a court-directed drug arrest, Kreischer went to her residence at a motel and urged her to report for the treatment session or she could be violation of the conditions of her release and arrested.

20. Rather than credit Kreischer's version of events or even ask him about it, however, Kreischer was then accused by fellow officers and his supervisor of having an illicit relationship with that person and for "shielding a fugitive" even though he had done no such thing and the person had not been a fugitive when Kreischer met with her and urged her to report for her drug treatment.

21. Kreischer was never formally charged with any wrongdoing and, in fact, there was a complete lack of evidence that he had done anything wrong. The District Attorney, however, arrested Jessica, and told her she would not be charged with anything if she "admitted" that she and Kreischer had an illicit relationship and that he was helping her evade arrest. Jessica refused to say that, as it was completely untrue in all respects.

22. On February 22, 2019, Kreischer met with defendant Kerchner regarding his LOFT (Local Officer Full Time, Attorney General Office) assignment. This assignment allowed Kreischer to be detailed to a Drug Task force working under the authority of the Pennsylvania Attorney General's Office.

23. At that meeting, Kerchner told Kreischer that he would approve another term of the LOFT assignment that allowed plaintiff to continue to work with the state Attorney

5

General's Office.

24   During that meeting, however, Kerchner confronted Kreischer about him speaking to Detective Brian Webbe, who was in charge of the Evidence Room, about Kerchner smoking cigarettes from the Evidence Room and Det. Kim Lippincott purchasing cigarettes with task force funds. Kerchner further stated that District Attorney Christine and First Assistant Michael Mancuso were aware of Kreischer's complaint regarding Kerchner.

25   Specifically, Webbe had confiscated 10 cartons of Newport cigarettes that did not have Tax Stamps and stored them in the Evidence Room. Kreischer asked Webbe how he would account for the missing cigarettes should there be an audit of the Evidence Room.

26   Further, Kreischer had on a prior occasion been asked by Lippincott to stop by the office, go into the evidence room and bring her a couple packs of cigarettes.   Kreischer asked Lippincott if everyone had purchased the cigarettes and she laughed and said, "no we are destroying them one pack at a time" and then advised him of how they were put into the Evidence Room.

27.   On February 23, 2019, Kreischer emailed Michael Mancuso and referred to the cigarettes incident.

28.   Kreischer was out of the office on leave on February 25-28, 2019 when Kerchner texted him and told him he was changing Kreischer's duties and work schedule and Kreischer was to report to his office on February 28, 2019.

29.   That same day, Kreischer was contacted by Jessica about her going to a hospital for a mental health evaluation and learned that Detective Mario Orlando had tried to force his way in to her motel room while she was undressed, which upset her greatly. Kreischer and Orlando

6

discussed those events.

30.     The next day, March 1, 2019, Kreischer received a text message from defendant Kerchner stating: "*Michael your employment with county is terminated.    You have until 3pm to return county property.    If you fail to comply by 3 pm you may be subject to civil and criminal liability. There is an arrest and detain warrant for Jessica \*\*\* you are to bring her immediately to detective center.*" Kreischer responded that he was in Philadelphia and did not know where Jessica was but she was supposed to go to Lehigh Valley Hospital for a mental health evaluation.

31.     Later that day, Kreischer texted defendant Mancuso that he would return equipment when he returned to the area that evening.

32.      Later that night and for a several hour period, defendants Orlando, Serfass and Kerchner repeatedly drove past Kreischer's residence shining spotlights in the windows and activating their sirens and air horns, in an effort to intimidate Kreischer and his family. Kreischer observed the detectives laughing and Kerchner appeared to be intoxicated.

33.      On March 2, 2019, Sean Radley, a mutual friend of Kreischer and defendant Orlando, called Kreischer and advised him that that Orlando called him on the day before stating that Kreischer had been terminated and Detective Orlando was going to arrest him.

34     On March 6, 2019, defendant Serfass told Jessica's grandmother that Kreischer was terminated because he spoke to Jessica on Friday (3/01) and he knew she was wanted and he had to arrest her. This was obviously untrue. No warrant for Jessica had been issued at that time and thus Kreischer could not known of any impending arrest warrant. Detective Serfass then stated that Kreischer and Jessica were sexually involved, which was completely untrue.

35.      Thereafter, on March 29, 2019, Kreischer received a call from "Mary" from the

7

Pennsylvania Department of Labor regarding Kreischer's unemployment compensation filing. She told Kreischer that Monroe County had submitted paperwork stating that Kreischer was terminated from his employment for "aiding and abetting a fugitive." Mary further advised that she had requested documentation from Monroe County, but it could not produce any paperwork confirming those facts.

36. Shortly thereafter, Jessica was called into the PNC branch where she had been going through a drive-thru window to withdraw money from her account. Jessica was advised she could not use the drive-thru any longer and that she must come into the bank and provide information on what the money was being used for. PNC advised her they must inform the IRS how she is spending her money.

37. Not long after that, in June 2019, Jessica was called by PNC bank and asked to go to the branch. Upon arrival at the branch, she was put on the phone with corporate security. They stated they wanted to assist her with her "domestic abuse" situation. Jessica responded she was not in a domestic abuse situation because she was single and not in a relationship. PNC bank employees then stated that they were aware that Kreischer was "keeping her from seeing her child to extort money from her." This was completely untrue and Jessica had asked Kreischer to take custody of her daughter because of her addiction issues, and Kreischer and his wife were raising the child as their own with Jessica's blessing.

38. On information and belief, these erroneous "facts" relied upon by PNC bank employees could only have come from Monroe County detectives. PNC corporate security also asked Jessica if she would agree to help prosecute Kreischer. Jessica denied that Kreischer had done anything improper and that Kreischer was an authorized signature on her account because

8

of her addiction issues and custody of her daughter. PNC then advised that they were closing her account and "didn't want her business."

39. Thereafter, Jessica was taken into custody on drug charges. Monroe County detectives and unidentified Pennsylvania State Police detectives continued to question Jessica as to her relationship with Kreischer, and stated that they knew the facts and "would arrest her for lying."

40. As before, Jessica denied that Kreischer had an improper relationship with her or had ever extorted her, or done anything improper. In fact, Jessica respected and was grateful to Kreischer for his loyalty and assistance and for his and his wife's agreement to help raise her as their goddaughter.

41. Jessica was further told that she needed to allow the police to review her cell phone to see if there were messages exchanged between her and Kreischer that showed communication between them relating to the arrest warrant previously issued for her on February 28, 2019 and whether Kreischer had helped her evade capture as a fugitive.   Although the request was itself improper, she nevertheless produced the phone for inspection; no such messages were found.

42. Thereafter, Kreischer applied for positions at other law enforcement positions which progressed to the point of the prospective employer contacting Monroe County for a reference. Each prospective employer told Kreischer that in order to be hired, he had to "clear things up with Monroe County." As Kreischer had done nothing wrong, there was nothing he could clear up.

43. As a result of these actions, Kreischer has been unable to obtain any position in law enforcement despite having an exemplary record and doing nothing wrong but having raised

9

the issue of wrongdoing at the Monroe County District Attorney's Office.

44. No reason was ever given to Kreischer for his termination. Nor was he ever charged with any wrongdoing.

45. Other terminated Monroe County detectives were provided with hearings of the type mandated by *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), where the United States Supreme Court held that certain public-sector employees can have a 14th Amendment property interest in their employment. Whether or not Kreischer, as a County Detective, had a property interest in his job mandating a *Loudermill* hearing, a protectible 14th Amendment liberty interest has been recognized in this Circuit for public employees whose names are sullied in connection with the loss of their employment, as took place here.

46. Specifically, and as set forth above, following their wrongful termination of Kreischer's employment, defendants embarked upon a "smear campaign" in which they communicated to numerous private and public entities and individuals the false statements that Kreischer had broken the law, aided and abetted a fugitive, committed domestic abuse and extorted money from a third party. Upon information and belief, defendants Christine, Mancuso and Kerchner were fully aware of this misconduct, and either intentionally directed it, encouraged and ratified it, or acted in grossly negligent fashion by failing to prevent these actions being taken by their subordinates within the office and with their knowledge of those acts.

47. For example, beginning almost immediately following his termination by text message on March 1, 2019 Defendants falsely stated to the state Unemployment Office, to the Pennsylvania Attorney General's Office and other law enforcement agencies, all of which had expressed to Kreischer its interest in hiring him, to the Public Defender's office in Monroe

County, to PNC bank officials and employees and to his friends and acquaintances that Kreischer had been fired for engaging in illegal conduct, including assisting a fugitive evade arrest, having an improper relationship with a cooperating witness, committing domestic abuse, extortion and other forms of illegal misconduct. Upon information and belief, defendants Christine, Mancuso and Kerchner were the individuals who spoke to other law enforcement agencies and third parties and disseminated these false statement with full knowledge of their falsity and with a full appreciation that these statements would almost certainly cause Kreischer not to be hired in any law enforcement capacity.

48.     None of these statements were even close to being true. They were made by defendants Christine, Mancuso and Kerchner or others acting at their direction and under their direct supervision with full knowledge that: (a) Kreischer was never provided with any reason for his termination or any form of *Laudermill* hearing; (b) no evidence or witness testimony was ever produced that Kreischer had done the things they claimed he had done; (c) no criminal charges were ever filed against Kreischer; and (d) the making of such comments was contrary to the policy of their office of not commenting upon the guilt or innocence of anyone outside of the criminal judicial process.

Under these circumstances, the undisputed facts and the well-established nature of the relevant governing law, none of the defendants enjoys qualified immunity for his or her actions.

IV. CLAIMS

COUNT I
VIOLATION OF 14th AMENDMENT OF THE UNITED STATES CONSTITUTION

42 U.S.C. §1983

49.     Plaintiff incorporates herein by reference, as if specifically pleaded, the

11

allegations set forth in paragraphs 1 through 48 above.

50. As a direct and proximate result of the Defendants' conduct, committed under color of state law, Plaintiff was punished and ultimately fired for speaking out about wrongdoing in the Monroe County District Attorney's Office in mishandling seized evidence and contraband and in violating laws regarding the accessing and handling of certain files.

51. As a result, Plaintiff suffered and continues to suffer harm, in violation of his rights under the laws and Constitution of the United States of America, in particular the Fourteenth Amendment thereto, and Title 42 U.S.C. §1983 and a violation of his liberty interest as he suffered a change in his legal status accompanied by defamatory statements and actions by defendants which injured Plaintiff's good name and reputation. Plaintiff thus has alleged deprivation of a liberty interest protectible under the due process clause.

52. As a direct and proximate result of the acts of the Defendants, Plaintiff sustained pain, permanent injury, emotional distress, and financial losses, all to his detriment.

53. The actions described herein of Defendants were malicious, intentional and displayed with a reckless indifference to the rights, safety and well being of the Plaintiff, such that imposition of punitive damages is warranted.

COUNT II

DEFAMATION

54. Plaintiff incorporates herein by reference, as if specifically pleaded, the allegations set forth in paragraphs 1 through 53 above.

55. On or about March 1, 2019 and continuing thereafter to the present day, defendants and others acting at their request and in furtherance of their interests defamed

Kreischer by falsely stating to third parties, including other law enforcement agencies and personnel, that he had engaged in illegal conduct and had been terminated from his employment for violating the criminal code and aiding a fugitive. These assertions were false and defamatory *per se* and wrongfully suggested that Kreischer had engaged in improper and criminal misconduct when, in fact, he had not. Defendants knew, or should have known, that Kreischer had not engaged in any wrongful conduct, when they made defamatory statements about him.

56. After terminating Kreischer's employment, Defendants communicated to personnel within the Country Detective's Office and to others that Kreischer had engaged in criminal misconduct and his employment had been terminated for that reason.

57. The actions of Defendants were undertaken in bad faith, for purely malicious reasons and without any legitimate basis, and are not protected by any common law or statutory privilege.

58. As a result of the wrongdoing of Defendants, Kreischer has sustained injury and reputational damage, and is entitled to damages, including compensatory damages, punitive damages, attorney's fees and costs of suit.

III.   COUNT III

CIVIL CONSPIRACY

59. Plaintiff incorporates herein by reference, as if specifically pleaded, the allegations set forth in paragraphs 1 through 58 above.

60. All of the defendants entered into an agreement and thereafter took concerted action and implemented a plan to achieve an unlawful purpose, namely the dismissal of Kreischer from his position as a Detective, and thereafter the besmirchment of his reputation to prevent him from making any further internal or external disclosures of irregularity and wrongdoing in the Department, which could result in public embarrassment to elected and

appointed officials and employees.

61.     Defendants were successful. Kreischer has been prevented from obtaining another position in law enforcement and has suffered public humiliation, emotional distress and financial loss.

WHEREFORE, Plaintiff demands judgment against all Defendants for compensatory damages, for punitive damages in an amount to be determined at trial, plus interest, costs, attorney's fees and such other relief as this Court may deem just.

        Respectfully submitted,

        ZARWIN, BAUM, DeVITO, KAPLAN,
        SCHAER & TODDY, P.C.

        */s/ Zachary Silverstein*
        David F. Mccomb
        *Attorney ID No. 35754*
        dfmccomb@zarwin.com
        Zachary A. Silverstein
        *Attorney ID No. 316491*
        zsilverstein@zarwin.com
        One Commerce Square
        2000 Market Street, 16th Floor
        Philadelphia, PA 19103
        (215) 569-2800
        Attorneys for Plaintiff

DATED:   February 8, 2021